FILED
United States District Court
Albuquerque, New Mexico

Mitchell R. Elfers
Clerk of Court

AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

District of New Mexico

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) |
| | ) Case No. |
| 6817 CLEGHORN RD NW, ALBUQUERQUE, NEW MEXICO 87120 | ) 23-MR-476 |
| | ) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, attached hereto and incorporated herein by reference.

located in the _____ District of _____ New Mexico _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, attached hereto and incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 8 U.S.C. § 1324 | Bringing in and harboring certain aliens |

The application is based on these facts:
See attached affidavit, incorporated herein by reference.

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Eric A. Millard, Special Agent, HSI

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
telephonic/electronic _____ *(specify reliable electronic means).*

Date:  3/1/2023

*Judge's signature*

City and state:  Albuquerque, New Mexico

Hon. Steven C. Yarbrough, U.S. Magistrate Judge

*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE PREMISES LOCATED AT 6817 CLEGHORN RD NW, ALBUQUERQUE, NEW MEXICO 87120 | Case No. _____<br><br>**Filed Under Seal** |

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, Eric A. Millard, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I, your affiant, make this affidavit in support of an application for a search warrant under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search the premises known as 6817 Cleghorn Rd NW, Albuquerque, NM 87120 hereinafter "TARGET PREMISES," further described and depicted in Attachment A, for the things described in Attachment B.

2.      I am a Special Agent (SA) with the Department of Homeland Security, Homeland Security Investigations (HSI), and have been employed by HSI since February of 2019. I am an investigative law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), and I am empowered by law to conduct criminal investigations and make arrests for felony offenses. I am a graduate of the Federal Law Enforcement Training Center (FLETC) and a graduate of Homeland Security Investigations Special Agent Training (HSISAT) in Brunswick, Georgia. Prior to becoming a Special Agent, I was employed by the U.S. Border Patrol (USBP) for over nine and a half years as a Patrol Agent.  While employed with the USBP, I routinely conducted general border security duties which involved, but were not limited to, addressing human smuggling as it pertains to deterring and/or apprehending undocumented non-citizens as they illegally entered the United States via border crossing.  As a Special Agent with

Homeland Security Investigations (HSI), I have participated in a wide range of federal criminal investigations, to include drug trafficking and human smuggling, and obtained numerous residential search warrants related to those crimes.

3.    Throughout my law enforcement career, I have received training and gained experience pertaining to federal criminal procedures, federal criminal statutes, United States Immigration and Nationality law, United States Customs laws and regulations, and other federal and state laws including but not limited to: Alien/human smuggling, human trafficking, the importation and distribution of controlled substances, bulk cash smuggling, firearms offenses, wire fraud, and conspiracy.  I am authorized and presently assigned to investigate controlled substance violations, including violations of 21 U.S.C. § 841(a)(1), and federal immigration law, including violations of 8 U.S.C. § 1324. Additionally, I have received advanced training in dismantling and disrupting Drug Trafficking Organizations (DTOs), money laundering investigations, and served approximately twelve (12) months as a Task Force Officer (TFO) with the U.S. Marshals Service (USMS).

4.    In addition to my training and experience, I have developed information I believe to be reliable from additional sources including, but not limited to:

> a.  Information provided by Special Agents ("SA"), Intelligence Research Specialists (IRS) of the Department of Homeland Security, and other law enforcement officials ("Agents"), including oral and written reports that I have received directly or indirectly from said investigators;
>
> b.  Sources of Information (SOIs)
>
> c.  Results of physical surveillance conducted by agents during this investigation;

      d.  A review of driver's license and automobile registration records;

      e.  Records from commercial databases; and

      f.  Records from the National Crime Information Center ("NCIC").

5.     Because this Affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only those facts that I believe are relevant to the determination of probable cause to support the issuance of the requested warrant. When the statements of others are set forth in this Affidavit, they are set forth in substance and in part.

6.     Based on the facts set forth in this Affidavit, there is probable cause to believe that violation of 8 U.S.C. § 1324, have been committed, are being committed, and will continue to be committed using the TARGET PREMISES.

7.     The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offenses being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

(Continued on following page)

## RELEVANT CRIMINAL STATUTES

8.      I believe there is probable cause that the SUBJECTS have committed, are

committing, and will continue to commit offenses involving violations of:

8 U.S.C. § 1324 – Bringing in and harboring certain aliens

## EVIDENCE SOUGHT DURING SEARCH

9.      Based on my training, experience, and participation in this and in similar

investigations, I believe that individuals involved in human smuggling of undocumented citizens

often conceal evidence of their activities in their residences and businesses, or the residences of

friends or relatives, and in surrounding areas to which they have ready access such as garages,

carports and outbuildings. They also conceal evidence in vehicles, including vehicles outside of

their residences and businesses, so that they have ready access to it and so that they can hide it

from law enforcement, including law enforcement officers executing search warrants at their

residences or businesses. Evidence also may be found in other areas to which a human smuggler

has ready access, such as rented storage areas and safety deposit boxes, or buried underground

on their property.  This evidence, which is discussed in detail in the following paragraphs,

includes undocumented persons hiding in storage sheds or outbuildings, items typically found in

possession of undocumented persons such as fraudulent forms of identification, foreign currency,

fraudulent immigration documents, records, human smuggling stash house secondary locations,

proceeds from human smuggling, and valuables obtained from proceeds.

10.     Human smugglers often travel domestically and internationally to facilitate their

human smuggling efforts.  Evidence of foreign and domestic travel by persons engaged in illegal

human smuggling includes travel itineraries, airline tickets, receipts, passports, and visas.  These

items are stored by human smugglers on their person or in their business, residences and

surrounding garages, outbuildings, carports and yards, the residences of relatives and in cars.

Many of these items are accessible via the internet and can be downloaded and saved on a

computer or digital media and on storage media.  The term "digital media" includes personal

digital assistants (PDAs), smartphones, tablets, BlackBerry devices, iPhones, iPods, iPads,

digital cameras, and cellular telephones.  The term "storage media" includes any physical object

upon which electronic data can be recorded, such as hard disks, RAM, floppy disks, flash

memory, CD-ROMs, and other magnetic or optical media or digital medium.

    11.    Human smugglers often use storage facilities for items related to human

smuggling and human trafficking that are at a location away from their residences and

businesses. These off-site storage facilities are often commercial storage lockers and rooms.

These locations are often used to store or hide people, the personal belongings of illegally

smuggled undocumented non-citizens, money, fraudulent documents, and valuables obtained

through their illegal proceeds. Human smugglers often keep documents and other items tending

to show the existence of other fraudulent documents, materials used to produce fraudulent

documents, and valuables obtained through illegal proceeds in areas such as storage facilities.

Those documents and other items include rental agreements, receipts, keys, notes, and maps

specifically concerning off-site storage rooms, routes to additional "human stash houses" or

"safe houses", lockers, and safety deposit boxes.  This evidence may be found on their person or

in their businesses, residences and surrounding garages, outbuildings, carports and yards, the

residences of friends or relatives, and cars.  This type of documentation can be stored on digital

media and concealed virtually anywhere.

    12.    Evidence of significant, unexplained income of human smugglers, or for the

acquisition and concealment of money and assets of human smuggling efforts, can be found on

banking and investment account statements, credit card account statements, canceled checks, money orders, deposit slips, check and savings books, business and personal ledgers, accounting records, safe deposit box records and keys, federal and state tax records, rental receipts, rental agreements, utility bills, overnight mail receipts, telephone bills, loan statements records reflecting ownership of real or personal property (such as deeds of trust or vehicle registration, insurance, and ownership information), vehicle and property rental records, lease and purchase agreements, and canceled mail.  These records can be maintained on paper, but also can be maintained as electronic data on computers and other digital media.  The above items are typically kept by human smugglers on their person or in their businesses, residences and surrounding garages, outbuildings, carports, and yards, the residences of friends or relatives, and vehicles.

13.     The use of digital media, including smartphones, tablets, cellular phones, and digital devices, has become part of everyday life. This is also true for human smuggling organizations. Information stored in electronic form on all of the above devices can provide evidence of human smuggling and/or drug trafficking. Human smugglers frequently use some or all of these devices to communicate with co-conspirators, and others involved in the human smuggling trade. These communications include, but are not limited to, phone calls, text messages, SMS (Short Message Service) messaging, MMS (Multimedia Messaging Service) messaging, social media posts and messaging, and smartphone application messaging services. Smartphones, tablets, cellular phones, and digital devices are frequently capable of storing messages, emails, social media communications, and communications made over smartphone applications. The content of these communications will often provide evidence of human smuggling. Numbers stored on a telephone (such as Caller ID lists reflecting recently received

6

calls, speed dial lists of names and/or telephone numbers, and logs of outgoing and incoming calls) can provide evidence of who the human smuggler is calling, and thus the identity of potential associates.

14.     Human smuggling organizations often maintain firearms and ammunition on their person or in their homes, businesses or cars to protect themselves, the undocumented persons they are smuggling into or across the United States, their associates, and their profits.  They also may maintain indicia of firearms such as receipts for firearms and ammunition, boxes for firearms and ammunition, firearms cleaning supplies, and instruction manuals and other documentation for firearms and ammunition. I know that weapons (including rifles, shotguns, and handguns) are tools of the trade for human smugglers, who often keep firearms in close proximity to themselves and their contraband to protect them from other smugglers and law enforcement.

15.     Documents showing who owns, occupies, or controls the location being searched also show who is responsible for the items found on the premises, including contraband, undocumented persons, and other evidence seized.  Documents and items showing the identity of the persons owning, residing in, or controlling the area being searched include, but are not limited to, utility and telephone bills, canceled envelopes and correspondence, outgoing answering machine messages, tax returns, keys, deeds and mortgage receipts.  These documents may also be produced on computers, downloaded from online accounts or scanned into digital format and stored on computers and related digital media.

16.     Based on my training and experience, particularly my experience relating to the investigation of properties such as the one listed in Attachment A, I know that it is common for human smugglers in such areas to keep evidence of their crimes throughout their properties. I

further know that all of the evidence described above could be located not only in the main residence, adjoining or adjacent building sharing the same property, but also in garages, outbuildings, storage containers, safes, safety deposit boxes, sheds, barns, vehicles, and even buried in the ground.

### COMPUTERS, ELECTRONIC STORAGE AND FORENSIC ANALYSIS

17.     As described above and in Attachment B, this application seeks permission to search for evidence and records that might be found on the property of the TARGET PREMISES in whatever form they are found.  Much of the evidence and records described in the paragraphs above, and in Attachment B, can also be produced and/or stored on computers, digital media and other storage media, such as computer hard drives, external hard drives, thumb drives, secure digital cards and other types of flash memory cards, compact disks and floppy disks, personal digital assistants (PDAs), smartphones, tablets, BlackBerry devices, iPhones, iPods, iPads, digital cameras, and cellular telephones.  For this reason, I submit that if a computer aided digital medium or storage medium is found on the property of the TARGET PREMISES, there is probable cause to believe those records will be stored on that computer or storage medium.  Thus, the warrant applied for would authorize the seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B). Because several people appear to share the TARGET PREMISES, it is possible that the TARGET PREMISES will contain storage media that are predominantly used, and perhaps owned, by persons who are not suspected of a crime.  If it is nonetheless determined that it is possible the things described in this warrant could be found on any of those computers or storage media, the warrant applied for would permit the seizure and review of those items as well.

18.     *Necessity of seizing or copying entire computers or storage media.*  In most cases, a thorough search of a premises for information that might be stored on storage media often requires the seizure of the physical storage media and later off-site review consistent with the warrant. In lieu of removing storage media from the premises, it is sometimes possible to make an image copy of storage media.  Generally speaking, imaging is the taking of a complete electronic picture of the computer's data, including all hidden sectors and deleted files.  Either seizure or imaging is often necessary to ensure the accuracy and completeness of data recorded on the storage media, and to prevent the loss of the data either from accidental or intentional destruction.  This is true because of the following:

19.     *The time required for an examination.* As noted above, not all evidence takes the form of documents and files that can be easily viewed on site.  Analyzing evidence of how a computer has been used, what it has been used for, and who has used it requires considerable time, and taking that much time on premises could be unreasonable. Storage media can store a large volume of information.  Reviewing that information for things described in the warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site.

20.     *Technical requirements.*  Computers can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations. Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site.  The vast array of computer hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data on the Premises.  However, taking the storage media off-site and reviewing it in a controlled environment will allow its examination with the proper tools and knowledge.

9

21.     *Variety of forms of electronic media.*  Records sought under this warrant could be stored in a variety of storage media formats that may require off-site reviewing with specialized forensic tools.

22.     *Nature of examination.*  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, or otherwise copying of computers, cellular devices, and/or storage media that reasonably appear to contain some or all of the evidence described in the warrant and would authorize a later review of the media or information consistent with the warrant.  The later review may require techniques, including but not limited to computer-assisted scans of the computer or entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

(Continued on following page)

## INVESTIGATION

23.    On Wednesday, January 25th, 2023, you Affiant received an investigative referral from HSI's El Paso office identifying a human smuggling stash-house located at 6812 Cleghorn Rd NW, Albuquerque, New Mexico 87120.  HSI El Paso reported that 6812 Cleghorn Rd NW was being rented by Francisco LUNA-Marquez, an identified human smuggling organization (HSO) facilitator.  LUNA is assisted by an Elmer Omar BACA-Marquez, whom HSI El Paso identified as the stash-house caretaker at 6812 Cleghorn Rd NW, and in-town pick-up driver for undocumented noncitizens (UNCs) arriving in Albuquerque, New Mexico.  BACA is a Mexican citizen who is illegally present in the United States (U.S.), having previously encountered and been removed by the U.S. Border Patrol (USBP) in the recent past.

24.    Your Affiant conducted a law enforcement database query of LUNA.  LUNA has a criminal history that includes arrests for illegal entry and re-entry, as well as New Mexico and Texas state charges for larceny and theft of a firearm.  Your affiant conducted queries of immigration databases and learned LUNA is a Mexican citizen who has been encountered by U.S. Border Patrol (USBP) Agents approximately three (3) times and was removed from the U.S. each time.  LUNA was last removed from the U.S. on or about July 28, 2022, following his most recent encounter with USBP.

25.    Your Affiant received information from USBP Agent, and HSI El Paso Taskforce Officer (TFO), Claudia Garcia concerning a human smuggling attempt which took place on July 12, 2022, at the USBP Checkpoint located at mile-marker 26 on Highway 185.  On this date, LUNA and Roy PEREZ were arrested at the checkpoint for attempting to smuggle eight (8) UNC to Albuquerque, New Mexico.  During his post arrest interview, LUNA admitted he was going to be paid $2000 to transport UNCs from El Paso, Texas to Albuquerque, New Mexico.

After accepting the job, LUNA asked PEREZ to accompany him on the trip and planned to split the proceeds with PEREZ.

26.    TFO Garcia also provided your Affiant with information concerning an incident which occurred on January 2, 2023. The incident involved an encounter CBP, Office of Field Operations (OFO), Officers had with Daniela HERMOSILLO and Amanda HERNANDEZ at the Paso Del Norte Port of Entry (POE) on that date. During the encounter, both HERMOSILLO and HERNANDEZ were found to be in possession of $3000 USD each. HERMOSILLO later admitted to CBP Officers that her money was proceeds from her involvement in human smuggling activities.

27.    CBP officers interviewed HERMOSILLO who told them she had recently transported smuggled UNCs from El Paso, Texas to Las Cruces and Albuquerque, New Mexico. HERMOSILLO stated on December 29, 2022, she transported smuggled UNCs to Albuquerque through the Las Cruces USBP checkpoint.

28.    CBP Officers conducted a search of HERMOSILLO's phone and observed phone number (505) 504-9949 listed among her contacts as "Burque Kk". The phone contact included a picture of LUNA standing in front of a white Chevrolet Silverado. Your Affiant obtained a copy of the picture that was included with the "Burque Kk" contact information. The subject in the phone contact picture matched the mugshot of Francisco LUNA-Marquez your Affiant observed in LUNA's immigration database record. Your Affiant later identified LUNA as the subscriber of phone number (505) 504-9949 following the receipt of a subpoena response report from HSI Albuquerque intelligence analysts. The report stated that AT&T account information listed "Francisco LUNA, 5161 Lang Ave NE, Albuquerque NM" as the subscriber for (505) 504-9949, activated on 06/08/2022, and using IMSI 310150748163001.

12

29.     CBP Officers also observed telephone number (505) 308-9990 listed in HERMOSILLO's contacts as "Elmer Mexico". Your Affiant later identified BACA as the subscriber of phone number (505) 308-9990 following receipt of a subpoena response report from HSI Albuquerque intelligence analysts. The report stated T-Mobile account information listed "Elmer Marquez, 549 Wisconsin St NE, Albuquerque NM", as the subscriber for (505) 308-9990, activated on 01/17/2022 and deactivated on 01/16/2023, and using IMSI 3102606627664497.

30.     The search HERMOSILLO's cellphone revealed a WhatsApp text message exchange dated December 25, 2022, made between LUNA and HERMOSILLO. During this exchange, LUNA sent HERMOSILLO a message informing HERMOSILLO that LUNA was sending BACA to meet her at a park in Albuquerque to pick up the UNCs from her. LUNA provided HERMOSILLO with BACA's telephone number and address 6812 Cleghorn Rd NW in this same text message.

31.     TFO Garcia provided your Affiant with information concerning an encounter which occurred on January 11, 2023, between a Deming, NM Border Patrol Agent (BPA) and a Luz Maria GARCIA-Avila during an immigration stop. The report indicates BPAs conducted a search of GARCIA's cellphone following the stop and observed a WhatsApp text message from a suspected human smuggling organization (HSO) facilitator directing GARCIA to 6812 Cleghorn Rd NW.

32.     In January 2023, your Affiant conducted an address check of 6812 Cleghorn Rd NW. Your Affiant observed a maroon 2014 Jeep Cherokee bearing New Mexico license plate UNM 46902 parked in the driveway of 6812 Cleghorn Rd NW. Vehicle registration records

checks revealed the Jeep Cherokee is registered to BACA.  The registration information identified 6812 Cleghorn Rd NW as BACA's address of record.

33.     In January 2023, Special Agents observed a subject standing in the front yard of 6812 Cleghorn Rd NW who strongly resembled BACA.  This subject was also observed by Special Agents departing and arriving at 6812 Cleghorn Rd NW driving the maroon Jeep Cherokee registered to BACA.

34.     In January 2023, your Affiant observed a black Chevrolet Tahoe bearing Oklahoma plate LBV 421 parked at 6812 Cleghorn Rd NW.  Vehicle registration records checks showed the Tahoe registered to a Brandon Shase Thomas and address 16028 E 77th St N, Owasso, OK 74055, a Tulsa suburb.  Your Affiant knows a current, established, human smuggling trend shared by HSOs operating in the El Paso and Albuquerque areas of operation (AOR) is to transport recently smuggled UNCs from El Paso, Texas to Albuquerque, New Mexico and then on to Tulsa, Oklahoma.

35.     On Monday, January 30, 2023, SA Millard observed a white, older-model delivery/box truck parked in the driveway of 6812 Cleghorn Rd NW, bearing NM temporary tag 19T-641073.  A vehicle registration records check of this temporary tag revealed no record.  Based on my training and experience, due to their large cargo capacities, delivery/box trucks, including but not limited to those offered for rental by vendors such as U-Haul, Ryder, etc., are frequently used by human smuggling organizations to transport UNCs.

36.     Your Affiant understands that in the state of New Mexico the first two digits of a NM temporary tag correlate to the year the temporary tag was issued and will expire.  As the current calendar year is 2023, a current temporary vehicle registration tag should start with "23".  Your Affiant knows smuggling and other criminal organizations will often use such expired

14

temporary plates, or fictious plates, to avoid being identified by law enforcement via vehicle registration records checks and license plate readers.

37.     During a surveillance conducted on February 2, 2023, Special Agents observed a subject who strongly resembled LUNA standing in front of 6812 Cleghorn Rd NW and conversing with two other male subjects.

38.     On February 6, 2023, Special Agents conducted surveillance of 6812 Cleghorn RD NW and observed BACA's maroon Jeep Cherokee arrive and park in the driveway of the TARGET PREMISES, directly across the street from 6812 Cleghorn Rd NW.  Two subjects who resembled LUNA and BACA, along with a third unknown male subject, exited the vehicle, walked across the street, and entered 6812 Cleghorn Rd NW.  During this time, a black, full-size, GMC pickup truck, bearing Chihuahua (CH), Mexico (MX) license plates EG-3726-A, was observed parked in front of the TARGET PREMISES.

39.     Approximately 30-45 minutes after the maroon Jeep Cherokee's arrival, two subjects, one resembling BACA, and the unidentified subject, exited the 6812 Cleghorn Rd NW, walked back across the street to the TARGET PREMISES, got into the GMC pickup truck and departed the area traveling heading west on the residential street.  Approximately 45 minutes later, the GMC returned and again parked in front of the TARGET PREMISES.  The subject resembling LUNA exited 6812 Cleghorn Rd NW, crossed the street, and helped the subject resembling BACA, and the third unidentified subject, retrieve several cases of bottled water and a case of Coca-Cola from the bed of the pickup truck, and carry them across the street to the 6812 Cleghorn Rd NW.

40.     Your Affiant received CBP border-crossing database information from HSI El Paso identifying the GMC pickup truck and its driver, Huber VARELA-Perez, as they entered

15

the U.S. via El Paso CBP's Paso Del Norte Port of Entry (POE) on December 17, 2022. HSI El Paso reported that VARELA is a Border Crosser Card (BCC) holder. Following the receipt of this information, you Affiant recalled during earlier address checks of 6812 Cleghorn Rd NW, in the month of January 2023, observing a black-in-color Volkswagen Jetta, with temporary NM tags 22T-362175, parked at the 6812 Cleghorn Rd NW. Vehicle registration records checks revealed the Volkswagen Jetta registered to a "Varela Perez" and the address of the car dealership where the vehicle was purchased, 4000 Central Ave SW, Albuquerque, NM 87105.

41.     During a surveillance conducted on February 8, 2023, Special Agents again observed the maroon Jeep Cherokee bearing New Mexico plate UNM46902 in the driveway of the TARGET PREMISES. A white Chevrolet Silverado bearing NM Patriot plate 92484US was also parked in the driveway of the TARGET PREMISES. A vehicle registration records check revealed the Chevrolet was registered to LUNA. The white Chevrolet Silverado observed by Special Agents matched the picture of the truck saved in HERMOSILLO's cellphone contact "Burque Kk".

42.     Also, on February 8, 2023, Special Agents observed an unidentified Hispanic male subject exit the TARGER PREMISES carrying a plastic shopping bag containing unidentified items. The subject then walked across the street to 6812 Cleghorn Rd NW and got in the backseat of a Ford Expedition, bearing TN license plate 5528LT, parked in front of 6812 Cleghorn Rd NW. A few moments later, the subject exited the Expedition, walked back across the street to the TARGET PREMISES holding the same plastic bag, and sat in the yard of that residence.

43.     On February 9, 2023, your Affiant was contacted by the USBP Deming New Mexico Station, and advised USBP Agents stopped a black Chevrolet Tahoe bearing Oklahoma

16

license plate LBV421 near Deming, New Mexico and arrested the driver Roy PEREZ, who was found to be transporting five (5) UNCs. Roy PEREZ, also a UNC, was previously encountered with LUNA on July 12, 2022, and both were arrested for human smuggling. Your Affiant has observed this vehicle on at least three occasions at or near the vicinity of the TARGET RESIDENCE and the residence located at 6812 Cleghorn Rd NW.

44.     On February 15, 2023, Special Agents conducted a surveillance of the TARGET PREMISES and 6812 Cleghorn Rd NW during the evening hours. The Ford Expedition bearing Tennessee plates 5528LT was observed parked in the driveway of the TARGET PREMISES. An unidentified Hispanic male was observed briefly talking on his cellphone in front of the 6812 Cleghorn Rd NW on two separate occasions. Following the conclusion of the second phone call, the subject was observed walking across the street to the TARGET PREMISES.

45.     A short time later, Special Agents observed several subjects exit the TARGET PREMISES and get into the backseat of the Ford Expedition bearing TN plates 5528LT. The unidentified male subject, who was observed just previously talking on his cellphone in front of 6812 Cleghorn Rd NW, was also observed exiting the TARGET PREMISES and getting into the driver's seat of the Ford Expedition. Special Agents observed that one of the passenger subjects was carrying what appeared to be several plastic grocery bags filled with clothes. The Ford Expedition was then observed departing the TARGET PREMISES and traveling westbound on Cleghorn Rd NW.

46.     On the evening of February 22, 2023, at approximately 7:00 PM, Special Agents observed a 26-foot U-Haul truck back into and park in the driveway of the TARGET PREMISES. Special Agents observed that the rear roll-up door of the U-Haul truck was positioned almost flush against the garage of the house. Between the hours of approximately

17

7:00 PM and 9:00 PM, Special Agents observed several subjects walk back and forth between the TARGET PREMISES and 6812 Cleghorn Rd NW while the U-Haul Truck was at the home. Special Agents conducted an address check of the TARGET PREMISES and 6812 Cleghorn Rd the following morning, February 23, 2023, at approximately 10:00 AM and observed the U-Haul truck still at the residence. Later that evening, on February 23, 2023, Special Agents observed that the U-Haul truck had departed.

47.     On February 23, 2023, your Affiant served immigration subpoena REQ-HSI-AL-2023-050284 to the homeowners of TARGET PREMISES and 6812 Cleghorn Rd NW. The subpoena ordered the homeowners to provide the lease agreement for the current tenant, the personal and contact information the tenant provided to the homeowners, how the rent is paid and by whom, and a list of any grievances the homeowner may have made concerning the tenant while they rented TARGET PREMISES and 6812 Cleghorn Rd NW. On February 24, 2023, your Affiant received the results for the subpoena. The results provided the following information: LUNA has been renting 6812 Cleghorn Rd NW since October 29, 2022, and the TARGET PREMISES since December 2, 2022.

48.     LUNA is normally responsible for paying the rent. However, LUNA would advise the homeowners that an individual by the name of "Omar", who LUNA identified as his cousin, would sometimes be paying the rent. Since LUNA has leased the TARGET PREMISES and 6812 Cleghorn Rd NW, rent has been paid in cash.

49.     On or about December 20, 2022, the homeowners observed a pile of garbage in excess of 30 thrash bags outside the backdoor, in the backyard, of 6812 Cleghorn Rd NW. The homeowner admonished LUNA and instructed him to have the trash gone by the following day. LUNA acknowledged that he understood this.

50.     On about December 20, 2022, the homeowner entered 6812 Cleghorn Rd NW and observed that the carpet in both bedrooms showed extensive wear and filth considering that it was new carpet that had been replaced just two months earlier.  One of the bedrooms had no furniture while the other had limited furniture and belongings.

51.     Following LUNA's rental of the TARGET PREMISES and 6812 Cleghorn Rd NW, the homeowners apparently hired various repair persons to make repairs to the properties. The subpoena response contained information relayed to the homeowners by repair persons. It was reported that one individual who entered the property reported observing firearms describe as an AK-47.  Repair persons also reported that an unusual number of people were in one of the properties at one time, and that a vehicle drove up to the property and several individuals exited and entered the home. It was unclear from the subpoena response which house contained the suspected AK-47, in which house the unusual number of people were observed, or at which house the individuals exiting the vehicle were observed.

52.     Based on my training and experience, these specific observations, which include but are not limited to the following; an inordinately large number of people seen in the house but an absence of furniture in the bedrooms, an extremely large pile of trash in the backyard of the residence, subjects paying the rent in cash only, the presence of the U-Haul truck(s), and subjects seen making frequent trips from a suspected stash-house to purchase large quantities of food and water are all evidence of an HSO stash-house.

53.     HSOs use these stash-houses to house/conceal large numbers of smuggled UNCs who themselves are normally prohibited by HSO members from leaving the home's interior. Such restrictions set by HSOs require its members to dispose of the excessive amounts of trash produced by the UNCs as well as be responsible for obtaining food and water for the smuggled

19

persons being kept inside.  Furthermore, a normal-sized American home is designed to accommodate the average-sized American family of 3-5 people.  As a result, HSOs will not supply stash-houses with furniture so they can keep up to 50 or more people in a house of this size.  This frequently results in smuggled persons having to sit and sleep on the floor in confined numbers.

54.     Additionally, given that the TARGET PREMISES, and the suspected HSO activity associated with it involves the neighboring property of 6812 Cleghorn Rd NW, it is reasonable to believe that the TARGET PREMISES is being used to temporarily house the HSO members themselves and evidence of their criminal and human smuggling activities, and/or simply used to house an overflow of UNCs that would not fit into 6812 Cleghorn Rd NW.

**CONCLUSION**

Based on the information and facts set forth in this affidavit, I believe the occupants of the TARGET PREMISES are in violation of Title 8 United States Code, Section 1324, and are using or have used the TARGET PREMISES in furtherance of these crimes.

Agents have observed and corroborated specific articulable facts consistent with human smuggling and observations by agents conducting physical surveillance, and the training and experience of SA Eric Millard.

Considering the facts set forth in this affidavit, there is probable cause to believe violation of Title 8 United States Code, Section 1324 have been committed, are being committed, and will continue to be committed by the occupants of the TARGET PREMISES. Furthermore, I submit there is probable cause to believe the occupants will continue utilizing the TARGET PREMISES in furtherance of human smuggling.

Thus, I respectfully request that a warrant be issued authorizing Homeland Security Investigations, with appropriate assistance from other law enforcement officers, to enter the said premises, to include its surrounding storage sheds, vehicles, storage structures, and outbuildings on the property described in ATTACHMENT A, to search for, seize, and examine the items and/or assets set forth above and in ATTACHMENT B

(Continued on following page)

AUSA Letitia Simms reviewed and approved this affidavit.

Respectfully submitted,

Eric Millard
Special Agent, HSI


Electronically submitted and telephonically sworn on March 1, 2023

HONORABLE STEVEN C. YARBROUGH
UNITED STATES MAGISTRATE JUDGE

22

## ATTACHMENT A

The TARGET PREMISES is located at 6817 Cleghorn Rd NW, Albuquerque, NM 87120. The residence is a tan stucco with a brown front door and an attached garage with a brown door. The residence has a flat roof with one window facing Cleghorn Rd NW. The residence is a duplex with the neighboring residence attached to its west side.



## ATTACHMENT B

### ITEMS TO BE SEARCHED AND/OR SEIZED

1. Illegally smuggled or undocumented persons.

2. Large amounts of currency, financial instruments, precious metals, jewelry and other items of value and/or proceeds of human smuggling transactions.

3. Any and all customer lists, lists of human smuggling payees, lists of persons to be smuggled or lists of persons who have been smuggled illegally into the United States, travel records, smuggler records, or any notes containing the individual names of such persons, telephone numbers, addresses of these customers or other persons to be illegally smuggled, and any corresponding records of accounts receivable, money paid or received, or cash received to pay for human smuggling or intended to pay for human smuggling efforts.

4. Telephone and address books or notes containing telephone numbers and addresses of co-conspirators.

5. Telephone toll records for homes and/or businesses owned or controlled by suspected co-conspirators, or other communication devices used by them and/or their human smuggling associates.

6. Messages, notes, correspondence, and/or communications between human smugglers and their co-conspirators.

7. Any and all financial or other instruments evidencing placement of assets in the names other than the names of the human smugglers themselves.

8. Books, records, receipts, diaries, notes, ledgers, airline tickets, cashier's checks, money orders and other papers relating to the transportation of suspected undocumented non-citizens.

9. Firearms and ammunition, including handguns, rifles, shotguns and automatic weapons.

10. Any and all computers, cellular devices, digital media, and storage media that reasonably appear to contain some or all of the records, information, and/or evidence described in Attachment B. As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data).